DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiffs-Appellants, Robert and Della Tucker, appeal the Highland County Court of Common Pleas judgment finding they materially breached a contract leasing commercial property, with an option to purchase, to Defendant-Appellee Mark Young. Specifically, Appellants argue that the trial court erred by finding that Appellee: (1) validly exercised the option to purchase even though he failed to tender payment as required by the lease agreement; and (2) lost the benefit of the bargain, thereby incurring pecuniary loss and damages in the amount of $6,500. We find that there is competent, credible evidence to support the trial court's determination with regard to assignments of error one, two, and three; however, the damage award, as addressed in Appellant's fourth assignment of error, is not adequately explained by the trial court. Therefore, we affirm in part and reverse in part the decision below and remand for further action consistent with this opinion.
 {¶ 2} Appellants filed an action for forcible detention against Appellee in the Hillsboro Municipal Court. The basis of the action was Appellee's failure to pay rent in June 2001. Appellee filed an answer, in which he alleged that he paid his rent in escrow to his attorney's trust account and raised three counterclaims.
 {¶ 3} Appellee's counterclaims alleged that Appellants: (1) executed a warranty deed that transferred legal title of approximately one acre of land covered under his lease agreement to a third party, and thereby breached the purchase contract and the lease and option to purchase agreement; (2) executed a warranty deed that transferred legal title of a driveway to a third party, in contravention of his rights by way of an easement, and thereby denied him the peaceable enjoyment of the premises and caused him damages in the amount of $7,000; and (3) committed fraud by advertising the property as containing a septic system and a county water connection, when neither were installed nor connected, thereby causing him future damages in excess of $10,000.
 {¶ 4} Appellants filed a reply and answer to Appellee's counterclaims, in which they: (1) replied that payment of rent to Appellee's attorney did not constitute payment to Appellants as required by the lease; (2) denied the first counterclaim and replied that Appellee exercised his option to purchase, but failed to tender payment as required by the agreement, thereby rendering his options void; (3) denied the second counterclaim and replied that the agreement required Appellee to obtain and install a new driveway on the leased property; and (4) denied the third counterclaim and replied that they never advertised the property as including a septic system, and admitted to agreeing to provide county water, but claimed they provided and paid for the tap to connect to the county water system.
 {¶ 5} Because Appellee's counterclaims exceeded the Municipal Court's jurisdictional limit, the case was transferred to the Highland County Court of Common Pleas for review and final judgment. Appellants then moved the trial court for an order compelling Appellee to pay all rental payments into the office of the Clerk of the Courts. The trial court granted the motion, and required Appellee to pay all rental payments already made, together with any future rental payments, into the office of the Clerk of Courts until final disposition of the case or further order. Later, Appellants moved the court to order the accrued rent held by the Clerk of Courts to be released. The trial court granted the motion.
 {¶ 6} On September 25-26, 2003, two years after Appellants filed the action for forcible detention, the trial court held a hearing on their action and Appellee's counterclaims.
 {¶ 7} At the hearing, Appellants testified that, in 1999, they decided to sell their land, which was situated in Highland County, Ohio and consisted of approximately 4.781 acres. They hired a realty company, Boone, Williams, and Dickey (hereinafter "BWD"), to list the land for sale. Initially, Appellants wanted to sell the land as a single tract, but later agreed to selling it as two separate parcels, with one parcel consisting of a commercial building, and the other a residence. Their realtor, through BWD, was Patty Rand.
 {¶ 8} Mr. Tucker testified that he showed Rand where the property line had to be placed in order to ensure that the leach field remained with the residential property. However, he admitted that he did not mark this line with pegs or hire a surveyor to delineate the property line.
 {¶ 9} Appellee contacted BWD to inquire about purchasing the commercial parcel. He spoke with Rick Williams, who later acted as his agent in the sale. According to Appellee, he agreed to purchase the property, but only if the property line was moved so as to allow him more frontage to construct a driveway directly next to the residential property driveway. He testified that he offered to provide the Tuckers with an easement for access to the leach field. According to Appellee, it was necessary that the frontage permit him to construct an additional driveway in a safe location, as S.R. 73 contained dips both to the North and South of the property, making it difficult to see approaching vehicles from either direction. Appellee testified that when Mr. Williams took him to view the property, he and Mr. Williams measured off the dimensions of the parcel that Appellee desired to purchase. Their measurements called for 287 feet fronting State Route 73. Appellee testified that he and Mr. Williams documented these measurements on a property map submitted to Appellants, which was later submitted to the court as Exhibit A. On January 26, 2000, Appellee signed a purchase contract for the property. Appellants, however, testified that the map documenting the measurements was not attached to the purchase agreement. No formal survey of the real estate was completed at this time.
 {¶ 10} At the direction of Mr. Williams, Appellee's agent, Attorney Sue Davis prepared a lease with an option to buy the property. While the lease referred to an "Exhibit A", a legal description of the property being leased and upon which an option was being taken, Exhibit A was neither provided to her, nor attached to the lease when it left her office.
 {¶ 11} On February 8, 2000, both Appellants and Appellee signed the lease agreement at different times in Mr. Williams' office. While Appellants testified that a map was not attached to the agreement and there was no discussion of the property lines, Mr. Williams testified the map was attached and boundaries were discussed.
 {¶ 12} In May 2000, Ms. Rand hired a surveyor, Mr. Blankenship, to survey Appellants' property, so that the split could be formalized and the remaining property containing the residence sold. Blankenship was not provided with any information regarding prior agreements between the parties for frontage on State Route 73; he merely divided the property so that each parcel contained approximately 2 acres. Blankenship's division of the property was approved by the Planning Commission on June 14, 2000, subsequent to the June 9, 2000 sale of the residential parcel to Mr. and Mrs. McDaniel. It was later discovered that the leach field for the residence was within the description of the parcel under option to Appellee.
 {¶ 13} The discovery that the leach field was contained in the parcel under option to Appellee led to a series of attempts by Appellee and Mr. McDaniel to move the stakes delineating the parcels. In October of 2000 another survey was conducted. As a result, Mr. and Mrs. McDaniel were allotted a larger portion of the property to account for the leach field. Appellee disputed the results of this survey, claiming the new plan interfered with road frontage on the property he had the option to purchase. Mr. Blankenship, the surveyor, testified that the parcel containing the commercial building was allotted 2.5 acres after the second survey. Unhappy with this arrangement, Appellee moved the stakes reflecting the property line, and Mr. McDaniel again moved them in response.
 {¶ 14} In February 1, 2001, Appellee sent the first of two letters (Joint Exhibit 10) to Appellants indicating he intended to exercise his option to purchase the commercial parcel. The second such letter (Joint Exhibit 12) was sent on March 8, 2001. Although he indicated his intent to exercise his option, Appellee never tendered the purchase price. Instead, because of the controversy between the parties regarding the frontage on State Route 73, beginning in May of 2000, Appellee made rental payments to his attorney who placed them in an escrow account until ordered by the court to deposit them with the Clerk of Court. Because they were not receiving their rental fees, Appellants brought an action for forcible detention against Appellee.
 {¶ 15} The Highland County Court of Common Pleas found: (1) Appellants breached the written agreement entitling Appellee to receive 287 feet of frontage of on State Route 73 when they sold the residential parcel to Mr. and Mrs. McDaniel; and (2) Appellee suffered damages, i.e., the loss of the benefit of his bargain, or the right to purchase the entire property described in the contract between Appellee and Appellants. The trial court awarded Appellee $6,500.00 as damages for Appellants' breach of the contract. Appellants appeal the trial court's decision, asserting four assignments of error:
 {¶ 16} I. LOWER COURT RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ERRED AS A MATTER OF LAW IN DETERMINING THAT THE APPELLEE EXERCISED HIS OPTION TO PURCHASE THE REAL ESTATE AT ISSUE IN THIS MATTER AS SET FORTH UNDER PARAGRAPH 12 OF THE LEASE.
 {¶ 17} II. THE LOWER COURT RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ERRED AS A MATTER OF LAW IN DETERMINING THAT THE APPELLEE INTENDED TO PURCHASE THE PROPERTY, BUT DID NOT TENDER PAYMENT OF $65,000.00 WITHIN THIRTY (30) DAYS OF EXERCISING HIS OPTION, MERELY BECAUSE HE WOULD NOT RECEIVE 287 FEET OF FRONTAGE ON STATE ROUTE 73.
 {¶ 18} III. THE LOWER COURT RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ERRED AS A MATTER OF LAW IN DETERMINING THAT THE APPELLEE LOST THE "BENEFIT OF THE BARGAIN", BECAUSE HE WOULD NOT RECEIVE 287 FEET OF ROAD FOOTAGE.
 {¶ 19} IV. THE LOWER COURT RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, ERRED AS A MATTER OF LAW AND ABUSED IT'S [sic] DISCRETION BY FINDING THAT THE APPELLEE SUFFERED PECUNIARY LOSS AND DAMAGES IN THE AMOUNT OF $6,500.00.
 I. {¶ 20} Appellants' first assignment of error posits that the Highland County Court of Common Pleas' determination that Appellee exercised his option to purchase Appellants' commercial parcel was against the manifest weight of the evidence. At the outset, we note that judgments supported by some competent and credible evidence will not be reversed on appeal as being against the manifest weight of the evidence. Five Star Supply, Inc. v.Trimat Construction, Lawrence App. No. 04CA10, 2004-Ohio-6157;Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10,722 N.E.2d 1018; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96,566 N.E.2d 154. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and to prevent a reversal. Five Star Supply, Inc., supra; see Barkleyv. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989;Simms v. Heskett (Sep. 18, 2000), Athens App. No. 00CA20.
 {¶ 21} We also note that questions concerning the weight of the evidence and the credibility of witnesses are to be determined by the trier of fact. Cole v. Complete Auto Transit,Inc. (1997), 119 Ohio App.3d 771, 777-78, 696 N.E.2d 289;Jacobs v. Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466 at ¶ 31. The underlying rationale for deferring to the trier of fact on these issues is that he or she is better able than this court to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those observations in weighing credibility. Five Star Supply, Inc., supra; see Myers v.Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Thus, the trial court is free to believe all, part, or none of the testimony of any witness who appear before it. Rogers v.Hill (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; Stewartv. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35, 42,623 N.E.2d 591; see also State v. Nichols (1993), 85 Ohio App.3d 65, 76,619 N.E.2d 80; State v. Harriston (1989), 63 Ohio App.3d 58,63, 577 N.E.2d 1144.
 {¶ 22} In its Decision and Judgment Entry dated April 6, 2004, the Highland County Court of Common Pleas determined, as set forth in Paragraph 4, that Appellee "indicated hisintention to exercise his option to purchase as set forth under paragraph 12 of Joint Exhibit 5." Supporting this determination were two letters (Joint Exhibits 10 and 12) sent to Appellants from Appellee's counsel indicating that Appellee intended to exercise his option to purchase the property at issue in this case. Because these letters support the trial court's determination, and because the standard of review employed in this instance is highly deferential, requiring only some competent, credible evidence to sustain the trial court's judgment, we affirm the judgment of the trial court as to this assignment of error.
 II. {¶ 23} We now turn to Appellants' second assignment of error. Appellants assert that the lower court ruled against the manifest weight of the evidence and erred as a matter of law in determining that Appellee intended to purchase the property, but failed to tender payment within thirty days of exercising his option merely because he would not receive 287 feet of frontage on State Route 73. As stated above, a factual finding of the trial court will only be reversed by a reviewing court if it is against the manifest weight of the evidence. See Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Findings supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. Id.
 {¶ 24} Parties to a contract may mutually relinquish or abandon their rights under a contract when one party acts inconsistently with the existence of the contract and the other party acquiesces. Fitzpatrick v. Yeauger (1998), Lawrence App. No. 97CA35, 1998 WL 379329, at *3; Hunter v. BPS Guard Serv.,Inc. (1995), 100 Ohio App.3d 532, 541, 654 N.E.2d 405, quotingHodges v. Ettinger (1934), 127 Ohio St. 460, 463, 189 N.E. 113. The parties' mutual assent dissolves the contract and neither party may sue for breach of the contract. Id.
 {¶ 25} However, if both parties do not consent to abandoning the contract and one party prevents the other from performing, a breach has occurred. Fitzpatrick, supra, at *4; Mason Tire Rubber Co. v. Cummins-Blair Co. (1927), 116 Ohio St. 554,157 N.E. 367. Once a party substantially performs its obligations under the contract, that party's breach of a term of the contract will not relieve the other party's performance obligation.Fitzpatrick, supra, at *4; Software Clearing House, Inc. v.Intrak, Inc. (1990), 66 Ohio App.3d 163, 170, 583 N.E.2d 1056. A party is relieved of its obligations only if the other party commits a material breach. Id. A material breach is a breach which violates a term essential to the purpose of the agreement. Id., citing Kersh v. Montgomery Developmental Ctr. (1987),35 Ohio App.3d 61, 62, 519 N.E.2d 665. Mere nominal, trifling, or technical departures will not result in a breach of contract; slight departures, omissions and inadvertencies should be disregarded. Fitzpatrick, supra, at *4; Cleveland NeighborhoodHealth Serv., Inc. v. St. Clair Builders, Inc. (1989),64 Ohio App.3d 639, 582 N.E.2d 640, citing Ashley v. Henahan (1897),56 Ohio St. 559, 47 N.E. 573.
 {¶ 26} In Paragraph 8 of its Decision and Judgment Entry, the Highland County Court of Common Pleas found that "the defendant [Appellee] was entitled by the written agreement of the parties to receive frontage of 287 feet on State Route 73." In Paragraph 9 of the Decision and Judgment Entry, the trial court went on to find that "the plaintiffs [Appellants] breached the written contracts existing between the parties when they sold a portion of the defendant's [Appellee's] anticipated frontage to William and Carol McDaniel on June 9, 2000." Moreover, in Paragraph 11, the trial court indicated that "since the defendant [Appellee] was deprived of his opportunity to receive the entire tract of land, he has suffered damages." Therefore, because the trial court determined that the opportunity to receive the entire tract of land was essential to the purpose of the agreement, the sale by Appellants of Appellee's anticipated frontage to Mr. and Mrs. McDaniel constituted a material breach of the contract between Appellants and Appellee. It follows that Appellee should be relieved of his obligations under the contract, here, payment of $65,000.000 within thirty days of exercising the option. There is competent, credible evidence supporting the trial court's determination on this issue; this assignment of error, therefore, is not well taken.
 III. {¶ 27} In their third assignment of error, Appellants argue that the trial court ruled against the manifest weight of the evidence and erred as a matter of law in determining that Appellee lost the "benefit of the bargain" because he would not receive 287 feet of frontage on State Route 73. Generally, a party that establishes breach of contract is entitled to the benefit of his bargain. City of Girard v. LeatherworksPartnership (2005), Trumbull App. No. 2004-T-0010,2005-Ohio-4779 at ¶ 41, quoting Garofalo v. Chicago Title Ins.Co. (1995), 104 Ohio App.3d 95, 108, 661 N.E.2d 218.
 {¶ 28} As stated above, in Paragraph 9 of its Decision and Judgment Entry, the trial court determined that "plaintiffs breached the written contracts existing between the parties when they sold a portion of the defendant's anticipated frontage to William and Carol McDaniel on June 9, 2000." Therefore, as Appellants were the breaching party, Appellee is entitled to the benefit of his bargain. In Paragraph 10 of the Decision and Judgment Entry, the trial court states that it "finds the defendant has been damaged in that he has lost the `benefit of his bargain', i.e. the right to purchase the entire property described in the contracts and having a full 287 feet of frontage."
 {¶ 29} In Paragraph 2 of its Decision and Judgment Entry, the trial court states that it "finds the testimony of Mr. Rick Williams to be the most persuasive in determining the `meeting of the minds' of the parties." Mr. Williams testified that when he and the Appellee visited the property at issue, they measured the road frontage Appellee desired to purchase and placed the measurements on the map of the property. He also testified the map was attached to the least at the time of signing and the boundaries were discussed with Appellants. Appellee testified to the same facts. This testimony strongly supports the trial court's finding that Appellee lost the benefit of his bargain by failing to receive the 287 feet of road frontage on State Route 73. Therefore, this assignment of error is not well taken.
 IV. {¶ 30} In their fourth and final assignment of error, Appellants argue the lower court ruled against the manifest weight of the evidence, erred as a matter of law, and abused its discretion by finding that Appellee suffered pecuniary loss and damages in the amount of $6,500.00. The normal remedy for a breach of contract claim is to give the injured party such relief as will put him in as good a position as if the contract had been performed. Fitzpatrick, supra; Channel Dry, Inc. v. Haver
(1990), 70 Ohio App.3d 197, 201, 590 N.E.2d 868. Damages include compensation a non-breaching party would have received if the contract had been performed, less the value received from release of further performance. Fitzpatrick, supra; Rhodes v. RhodesIndus., Inc. (1991), 71 Ohio App.3d 797, 809, 595 N.E.2d 441, citing Allen, Heaton McDonald, Inc. v. Castle Farm AmusementCo. (1949), 151 Ohio St. 522, 86 N.E.2d 782; Schulke RadioProductions, Ltd. v. Midwestern Broadcasting Co. (1983),6 Ohio St.3d 436, 453 N.E.2d 683. Within these general rules, a trial court enjoys some flexibility in structuring damage awards. Id.
 {¶ 31} However, in our review of the record it appears the trial court did not adequately explain how it determined the $6,500.00 damages award. As such, we cannot determine if competent credible evidence supports this finding.
 {¶ 32} In conclusion, we find that the holdings of the Highland County Court of Common Pleas with regard to assignments of error one, two, and three were supported by competent, credible evidence. However, we find that its damage award, addressed in Appellant's fourth assignment of error, was not adequately explained by the trial court to permit proper appellate review of this issue. As such, we reverse its judgment with regard to the damage award and remand the case to the Highland County Court of Common Pleas for a proper determination and explanation of damages.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED and that the Appellee and Appellant split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, P.J.: Concurs in Judgment and Opinion as to Assignment of Error I, II, III, and Concurs in Judgment Only to Assignment of Error IV.
Kline, J.: Concurs in Judgment and Opinion.