[Cite as *McKinney v. LaMalfa Party Ctr.*, 2022-Ohio-4333.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

BRIANNA MCKINNEY,

      Plaintiff-Appellee,

- vs -

LAMALFA PARTY CENTER,

      Defendant-Appellant.

CASE NO. 2022-L-023

Civil Appeal from the
Painesville Municipal Court

Trial Court No. 2021 CVF 00384

---

# O P I N I O N

Decided: December 5, 2022
Judgment: Affirmed

---

*Randy A. Vermilya,* 41 East Erie Street, Suite 2, Painesville, OH 44077 (For Plaintiff-Appellee).

*Monica R. Zibbel* and *Glenn E. Forbes,* Forbes Law, LLC, 166 Main Street, Painesville, OH 44077 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, LaMalfa Party Center ("LaMalfa"), appeals the March 3, 2022 judgment of the Painesville Municipal Court adopting the February 25, 2022 Magistrate's Decision entering judgment in favor of appellee, Brianna McKinney. For the reasons set forth herein, the judgment is affirmed.

{¶2} The parties entered into a contract for a wedding reception to be held on October 31, 2020 at LaMalfa's place of business. The contract expressly stated that no terms of the contract could be changed once signed, and that monies paid as deposits would not be refunded if the event was cancelled by either party for any reason. In

February 2020, Ms. McKinney paid a deposit of $5,500 for the event, $500 of which was paid to reserve the October 31, 2020 date.

{¶3} During the summer of 2020, Ms. McKinney contacted LaMalfa and expressed her concerns regarding holding her reception during the COVID-19 pandemic; she requested to reschedule her wedding date. LaMalfa denied her request and set forth a series of COVID-19-related restrictions for the wedding reception, including but not limited to mandating masks, social distancing, and changing the buffet meal stated in the contract to a plated meal. The contract still required Ms. McKinney to have, and pay for, a minimum of 120 guests. Ms. McKinney failed to provide LaMalfa with a final headcount by the date set forth in the contract; by Ms. McKinney's uncontradicted testimony, LaMalfa cancelled the contract shortly thereafter, apparently in response to Ms. McKinney's failure to provide the required information. LaMalfa argues that it was at all relevant times ready, willing, and able to perform its obligations under the contract, even with the COVID-19 mandates in place. According to Ms. McKinney, she got married on the original October 31, 2020 wedding date in her parents' backyard with only her parents present.

{¶4} Ms. McKinney filed a claim against LaMalfa in the Mentor Municipal Court for the return of her deposit but due to a conflict, the matter was transferred to the Painesville Municipal Court, Small Claims Division. Upon LaMalfa's motion, it was transferred to the civil docket in the Painesville Municipal Court. The complaint filed by Ms. McKinney alleged that LaMalfa wrongfully withheld her $5,500 deposit for a wedding due to "impossibility of performance." LaMalfa admitted withholding the deposit but denied that the event was impossible and that the refusal to grant a refund was due to impossibility of performance.

2

**{¶5}** A trial was held before a magistrate in December 2021. Ms. McKinney testified that she understood the $500 deposit to save the date was forfeited, and that she could have had the reception at LaMalfa on the original wedding date, but that she did not want to risk her guests' health. The magistrate ultimately found in favor of Ms. McKinney, finding that LaMalfa materially breached the contract by adding the COVID-19 restrictions. LaMalfa filed a Motion for Findings of Fact and Conclusions of Law, which the court issued in January 2022. LaMalfa also filed Objections to the Magistrate's Decision and supplemental objections, which Ms. McKinney opposed. The court adopted the Magistrate's Decision in March 2022 and entered judgment against LaMalfa in the amount of $5,000 plus interest.

**{¶6}** It is from this judgment that LaMalfa now appeals, assigning four errors for our review. Ms. McKinney did not file an appellee's brief.

**{¶7}** "The standard of review generally employed to review a trial court's adoption of a magistrate's decision is abuse of discretion." *Echols v. Echols*, 11th Dist. Geauga No. 2021-G-0040, 2022-Ohio-1719, ¶23, citing *Degrant v. Degrant*, 11th Dist. Geauga Nos. 2019-G-0190 and 2019-G-0216, 2020-Ohio-70, ¶24. The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Stated differently, an abuse of discretion is the "trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, citing *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black Law's Dictionary (8 Ed.Rev.2004) 11.

3

"When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error." *Beechler, supra,* at ¶67.

{¶8} LaMalfa's first assigned error states:

{¶9} The trial court erred and abused its discretion by adopting the Magistrate's finding of fact, where the Magistrate's finding of fact was not based upon direct evidence and was clearly erroneous.

{¶10} Under this assignment of error, LaMalfa specifically challenges the magistrate's finding of fact that Ms. McKinney "did not want her wedding to proceed with the several changes that the LaMalfa made to the contract." LaMalfa argues there is no evidence to support this statement in the record. Instead, it argues the reason Ms. McKinney stopped performance on her contractual obligations was because LaMalfa would not change the date and she was concerned about putting her guests' health at risk due to COVID-19. Because this is a challenge to a factual determination, the issue is whether the magistrate's finding is supported by competent, credible evidence in the record.

{¶11} Ms. McKinney testified that she could have had her wedding on October 31, 2020 at LaMalfa with the new policies and precautions that it put in place based on the state COVID-19 mandates, but that she could not have invited as many people, and that she did not want to put her guests' health at risk.

{¶12} LaMalfa is technically correct; Ms. McKinney did not expressly testify that she did not want to proceed with the reception because of the restrictions LaMalfa put in place. However, the court's statement was a reasonable inference from Ms. McKinney's testimony. She testified that she did not want to put her guests' health at risk. Even with

4

the safety precautions LaMalfa put in place, Ms. McKinney would have had to invite, or at least pay for, 120 guests. Furthermore, as discussed under the third assigned error, the new COVID-19 procedures materially changed the contract. Thus, it was fair for the court to conclude that Ms. McKinney did not wish to proceed under the restrictions that LaMalfa put in place.

{¶13} Accordingly, LaMalfa's first assigned error is without merit.

{¶14} Its second states:

{¶15} The trial court erred and abused its discretion by adopting the Magistrate's conclusion of law that McKinney properly brought a claim under the theory of impossibility.

{¶16} Under this assignment of error, LaMalfa challenges the legal sufficiency of Ms. McKinney's pleading. Ms. McKinney's complaint sought reimbursement for the deposit on the grounds of "impossibility of performance." As LaMalfa correctly argues on appeal, impossibility of performance is not a cause of action. *Lehigh Gas-Ohio, L.L.C. v. Cincy Oil Queen City, L.L.C.*, 1st Dist. No. C-150572, 2016-Ohio-4611, ¶15 ("The doctrine is an affirmative defense to a breach-of-contract claim. * * * It cannot be used * * * as a means of recovering damages under a contract."). However, the court did not find for Ms. McKinney on the grounds of impossibility of performance, but on the grounds that LaMalfa materially breached the contract.

{¶17} Moreover, the fact that Ms. McKinney did not expressly argue a breach of contract cause of action in her complaint is not fatal. "'Because Ohio is a notice-pleading state, Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity. * * * Rather, Civ.R. 8(A) requires only a short and plain statement of the claim that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

5

is based. * * * Thus, a plaintiff is not required to plead the legal theory of the case at the pleading stage and need only give reasonable notice of the claim.' (Internal citations omitted.)" *McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, ¶38, quoting *Ogle v. Ohio Power Co.*, 180 Ohio App.3d 44, 2008-Ohio-7042, ¶5. "When filing a claim pursuant to Civ.R. 8(A),'[a] party is not required to 'plead the legal theory of recovery'; furthermore, 'a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief.'" *Fancher v. Fancher*, 8 Ohio App.3d 79 (1st Dist.1982), quoting *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526 (1994). However, "'the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Fancher, supra*, quoting 5 Wright & Miller, Federal Practice & Procedure: Civil (1969), at 120-123, Section 1216.

{¶18} LaMalfa does not argue it did not have fair notice of Ms. McKinney's claims, and we find the complaint did provide LaMalfa fair notice. Thus, the fact that Ms. McKinney's complaint did not expressly state it was pursuing a claim for breach of contract does not preclude the trial court's finding that LaMalfa breached the contract.

{¶19} LaMalfa's second assigned error is without merit.

{¶20} Its third states:

{¶21} The trial court erred and abused its discretion by adopting the Magistrate's conclusions of law that Defendant materially breached the contract.

Case No. 2022-L-023

{¶22} Under this assigned error, LaMalfa challenges the court's factual finding that it materially breached the contract. Specifically, it argues the changes it made to the contract were "insignificant, technical departures and clearly had only a nominal effect upon the essential purpose." The original contract outlines a minimum of 120 guests, a buffet dinner, drinks, dancing, and additional enhancements options. LaMalfa argues that Ms. McKinney was still able to invite at least 120 guests, have dinner, drinks, dancing, and add-on enhancements, if selected. It also notes it provided a sit-down dinner as an alternative to the buffet.

{¶23} "'[A] material breach occurs when a party violates a term essential to the purpose of the agreement.'" *Troy Oaks Homes & Residential Club, Inc. v. Sokolowski*, 11th Dist. Geauga No. 2016-G-0081, 2016-Ohio-8427, ¶50, quoting *Ohio Educ. Ass'n v. Lopez*, 10th Dist. Franklin No. 09AP-1165, 2010-Ohio-5079, ¶12. "'Mere nominal, trifling, or technical departures will not result in a breach of contract; slight departures, omissions, and inadvertencies should be disregarded.'" *Sokolowski, supra,* quoting *Tucker v. Young*, 4th Dist. Highland No. 04CA10, 2006-Ohio-1126, ¶25.

{¶24} "As to what constitutes a material breach of a contract, Ohio courts have considered the following factors:

{¶25} '(1) the extent to which the injured party will be deprived of the benefit that he reasonably expected, (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture, (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances, and (5) the extent

7

Case No. 2022-L-023

to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.'" *Berk Ents., Inc. v. Polivka*, 11th Dist. Trumbull No. 2012-T-0073, 2013-Ohio-4961, ¶28-29, quoting *Brakefire, Inc. v. Overbeck*, 144 Ohio Misc.2d 35, 2007-Ohio-6464, ¶44.

{¶26} LaMalfa downplays the significance of the changes and ignores the fact that the contract itself stated that the terms of the contract could not be changed once signed. LaMalfa's changes mandated masks for all guest unless actively eating or drinking, a maximum number of 10 guests per table, proper social distancing of all people at all times, no buffet or family serving, and no open food on table "when possible."

{¶27} With these unilateral changes, Ms. McKinney would have had a substantially different wedding reception than the one for which she contracted. The mandates, while appropriate COVID-19 safety measures in general, materially altered the contract. Such restrictions impacted every single person at the wedding, which would have been a minimum of 120 people, per the terms of the contract. It would prevent hugs or close interpersonal contact from guests as is common for the occasion; it would limit the photographs able to be taken due to social distancing; it would mean photographs of the bridal party and guests with their faces concealed behind masks. And even providing a plated meal alternative, the elimination of the buffet was a material change to the contract that "could not" be altered after signed as the price of the buffet and the plated meals were different.

{¶28} The purpose of the contract was for a wedding and reception. However, because at the time of the signing of the contract COVID-19 restrictions were not anticipated, the changes LaMalfa made to the contract altered the wedding and reception

8

Case No. 2022-L-023

that both parties initially envisioned and limited the extent to which the bridal party, friends, and family could celebrate. The fact that Ms. McKinney got married on October 31, 2020 does not change our opinion. She testified that she was married in her parents' backyard with only her parents present, a very different wedding day than she contracted for with LaMalfa. Accordingly, we find the trial court's determination that LaMalfa materially breached the contract is supported by competent, credible evidence in the record.

{¶29} Finally, contrary to LaMalfa's argument, it is not "clear" that Ms. McKinney wanted out of the contract because she changed her mind and did not want to hold her wedding at LaMalfa's Party Center. The record shows that up until LaMalfa cancelled the date, she wanted to reschedule with LaMalfa for a later date, not cancel altogether.

{¶30} Accordingly, LaMalfa's third assigned error is without merit.

{¶31} Its final assigned error states:

{¶32} The trial court erred in adopting the magistrate's Decision determining McKinney is entitled to the return of her $5000.00 deposit.

{¶33} Under this assigned error, LaMalfa challenges the trial court's application of a contractual term. Specifically, it argues the trial court erred in granting Ms. McKinney the return of her $5,000 deposit because the contract expressly stated "[i]n the event you or we have to cancel the event, for any reason, all deposits are non-refundable." LaMalfa argues the court erred in adopting the magistrate's decision because the contract contained a no refund policy. We disagree.

{¶34} "[M]oney damages awarded for breach of contract are designed to place an aggrieved party in the same position he or she would have been had the contract not been breached." *Kumar v. USA Insulation*, 11th Dist. Lake No. 2018-L-058, 2018-Ohio-

9

5332, ¶24, quoting *Buckley v. Ollila*, 11th Dist. Trumbull No. 98-T-0177, 2000 WL 263739, *2 (Mar. 3, 2000), citing *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439 (1983).

{¶35} LaMalfa drafted a contract which expressly stated that the terms of the contract could not be altered once signed. The unforeseen effects of COVID-19 changed the circumstances on both sides of the contract. Ms. McKinney requested a reasonable alteration to the contract, which LaMalfa denied while simultaneously imposing its own alterations to the contract, which Ms. McKinney did not have any control over but was required to abide by. Those restrictions materially altered the terms of the contract. Moreover, those changes were not permitted pursuant to the terms of LaMalfa's contract. By unilaterally imposing alterations to the contract, LaMalfa breached the contract. Because of LaMalfa's breach, Ms. McKinney lost her $5,000 deposit and the benefit for which she contracted. Awarding Ms. McKinney $5,000 put Ms. McKinney back in the position she would have been in had LaMalfa not breached the contract.

{¶36} Accordingly, LaMalfa's fourth assigned error is without merit.

{¶37} In light of the foregoing, the March 3, 2022 judgment of the Painesville Municipal Court is affirmed.


MARY JANE TRAPP, J., concurs,

JOHN J. EKLUND, P.J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

10

Case No. 2022-L-023

JOHN J. EKLUND, P.J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶38} While I concur with the Majority's analysis of assignment of error number two, regarding notice pleading, I respectfully dissent from the balance of the opinion. I do not agree with the majority's view that the COVID-19 precautions LaMalfa put in place materially breached the contract.

{¶39} The decision to adopt a magistrate's decision is typically reviewed under an abuse of discretion standard. *Banks v. Shark Auto Sales LLC*, 11th Dist. Trumbull No. 2022-T-0018, 2022-Ohio-3489, ¶ 7. "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.' *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, 2014 WL 2881994, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67.

{¶40} "'A material breach occurs when a party violates a term essential to the purpose of the agreement.'" *Troy Oaks Homes & Residential Club, Inc. v. Sokolowski*,

11

11th Dist. No. 2016-G-0081, 2016-Ohio-8427, 78 N.E.3d 365, ¶ 28, quoting *Ohio Educ. Ass'n v. Lopez*, 10th Dist. Franklin No. 09AP-1165, 2010-Ohio-5079, ¶ 12. "'Mere nominal, trifling, or technical departures will not result in a breach of contract; slight departures, omissions, and inadvertencies should be disregarded." *Id.*, quoting *Tucker v. Young*, 4th Dist. Highland No. 04CA10, 2006-Ohio-1126, ¶ 25. "Where there has been a material breach of contract by one party, the other party may treat the contract as terminated and rescind it or may sue for damages." *McDonagh v. Cortland Sav. & Banking Co.,* 11th Dist. Trumbull No. 2002-T-0138, 2004-Ohio-1146, ¶ 38.

{¶41} Whether a party's breach was material "'requires, inter alia, an examination of the parties' injuries, whether and how much the injured parties would or could have been compensated, and whether the parties acted in good faith. * * * All of these inquires turn on subjective facts." *Alloush v. Physician Cardiovascular Venture, L.L.C.*, 11th Dist. Trumbull No. 2011-T-0112, 2013-Ohio-2400, ¶ 32., quoting *O'Brien v. Ohio State Univ.,* 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, ¶ 11.

{¶42} Accepting the trial court's findings of fact as true, the court of appeals must "independently determine – without deference to the trial court's conclusion – whether those facts satisfy the trial court's legal conclusion." *O'Brien* at ¶ 12, citing *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202*,* 865 N.E.2d 1264, ¶ 40. *"Mere disagreement* with the trial court's findings is not sufficient to overturn them." *Wilson,* at ¶ 40.

{¶43} Here, LaMalfa imposed certain COVID-19 related precautions, some of which were mandated by the Ohio Department of Health. [1] Those precautions included

---

1. *See Ohio Department of Health Director's Dine Safe Ohio Orders* June 5, 2020, and September 23, 2020.

masks for all guests unless actively eating or drinking, a maximum number of 10 guests per table, proper social distancing, and no buffet or open food to remain on the table.

{¶44} In an email sent in August, LaMalfa indicated it could not offer the buffet dinner but suggested, "[i]t just might be a little too early to tell but currently we are unable to move forward with the buffet dinner. We can talk further as time move's [sic] forward pertaining to your alternate buffet considerations."

{¶45} The Magistrate's findings of fact determined that McKinney "did not want to proceed with her wedding for fear of exposing guests to COVID and did not want her wedding to proceed with the several changes that the Defendant made to the contract." However, this finding of fact is not supported by the record and does not support the legal conclusion that "the terms of the contract were materially changed by the Defendant[.]"

{¶46} At trial, McKinney did not express a desire to proceed with the reception without COVID-19 precautions in place. Instead, she wanted to change the date of the reception "because I was uncomfortable having the date since COVID, and I didn't want anyone to get sick." She had a single request – to move the date of the reception to a later date due to health concerns for herself and her guests. The trial court abused its discretion in adopting the magistrate's decision because the evidence did not demonstrate a material breach of the contract. Instead, McKinney merely desired a later reception date regardless of whether LaMalfa's COVID-19 precautions were in place.

{¶47} The contract between McKinney and LaMalfa did not address the issues of masks, the number of guests seated at a table, or social distancing. None of these precautions were a term of the contract or essential to the purpose of the contract. Thus, when LaMalfa imposed those precautions to comply with the Ohio Department of Health

13

Case No. 2022-L-023

regulations, they cannot have resulted in a material breach of the contract. More importantly, none of these requirements deprived appellee of the benefit she reasonably expected or constituted a failure of appellant to reasonably perform its duties under the contract.

{¶48} As for the buffet, the contract did specify the "Wingate Grand Buffet" package, and LaMalfa's precautions altered that term. However, I do not believe that this alteration constituted a "material breach." First, the "Wingate Grand Buffet" had a price point of $42.50 per person while the most comparable plated option, the "Formal Sit Down Dinner" had a price point of $38.50 per person. This change would have resulted in a lower cost for McKinney. Second, while some may have an opinion on the aesthetic difference between a "grand buffet" and a "formal sit down dinner," my view of the law suggests that any difference is not material.

{¶49} The essential purpose of the agreement – to have a wedding reception – was intact. Indeed, the other essential purposes of the agreement were unchanged. LaMalfa was still going to hold the wedding ceremony, the grand ballroom was still going to open, dinner would still be served, the bridal party still introduced, the first dance and cake cutting would still happen. Guests would still be free to toast, drink, and dance.

{¶50} The only difference of contractual significance was that the dinner would be a formal plated dinner rather than a grand buffet. This is the epitome of a "nominal," "technical" departure that "should be disregarded." *Tucker, supra*, at ¶ 25. The lack of the buffet was not a material breach, and when McKinney failed to provide a final number count as the contract required, she forfeited her $5,000 deposit.

14

{¶51} Finally, the deposit was non-refundable. The contract specifically stated, "in the event you or we have to cancel the event, for any reason, all deposits are non-refundable." Therefore, under the terms of the contract, LaMalfa would have been within its rights to cancel the event entirely due to COVID-19 and to retain the deposit. Instead, McKinney herself testified that LaMalfa was "ready, willing and able" to hold the reception on the October 31 date.

{¶52} Moreover, retention of the deposit would not represent a windfall to LaMalfa as the final cost of the event would have exceeded the deposit amount. Instead, retention of the deposit is a means to protect the vendor if the event is cancelled because scheduling a new event on that same date is often difficult or impossible.

{¶53} For the reasons stated above, I respectfully concur in part and dissent in part. I would reverse the order of the trial court refunding the (non)refundable deposit to McKinney.